**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Dennis A. Smith

     v.                          Civil No. 05-cv-374-JD

Warden, New Hampshire
State Prison et al.

**REPORT AND RECOMMENDATION**

Dennis A. Smith has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging civil rights violations under the First and Fourteenth Amendments (document nos. 1, 3, 6, 9, 14, 16).[1] Seeking injunctive and declaratory relief, he brings this action against Stephen J. Curry, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), and the following employees of the New Hampshire State Prison ("NHSP"): Bruce Cattell, Warden; Greg Crompton, Deputy Warden; Christopher Shaw, Lieutenant; and Paul Carroll, Corporal. Also filed is a Motion to Clarify Position and Supplement the Record and a Motion to Supplement Grievance Material (document. nos. 6 and 9).

---

[1]Pursuant to a Notice of Ruling issued by Barbadoro, J. on December 14, 2005, this action has been consolidated with Smith v. New Hampshire State Prison, 05-cv-362-PB. Judge Barbadoro denied Smith's Petition for Writ of Habeas Corpus Ad Testificandum without prejudice on the basis that he sought "specified relief in his civil rights action rather than a distinct claim for relief" under the habeas statute (document no. 10).

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Smith has alleged the following claims: (1) First and Fourteenth Amendment retaliation claims against Curry, Cattell, Shaw and Carroll; and (2) a Fourteenth Amendment equal protection claim against Cattell.  I recommend dismissal of all remaining claims. I grant Smith's motions to clarify and supplement the record (document nos. 6 and 9).

## Standard of Review

In reviewing a *pro se* complaint, this Court must construe the pleading liberally and in favor of the *pro se* litigant.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review

2

ensures that *pro se* pleadings are given fair and meaningful
consideration.  <u>See</u> <u>Eveland v. Director of CIA</u>, 843 F.2d 46, 49
(1st Cir. 1988).

### Background

Convicted by the New Hampshire Superior Court (Merrimack
County) in 1999, Smith was sentenced to a term of imprisonment at
the NHSP.  He is currently incarcerated at the Estelle High
Security Unit in Huntsville, Texas ("Estelle Unit").  The claims
in this action stem from a series of involuntary interstate
prison transfers to which Smith was subjected during 1997 and
2004.

While incarcerated at the NHSP in March 1997, Smith had
direct contact with Kimberly Kee, an intern dental consultant
with the NHSP.  He alleges that his "objective was to win Kim
over and have her bring me in a 9MM with two (2) fully loaded
clips thinking she was bringing in drugs and then turn my
attention to nineteen (19) very very very abusive correctional
officers who truly needed to be severely disciplined before
turning the gun on myself."  On June 4, 1997, Kee was arrested at
the NHSP on charges of possession of cocaine and marijuana with
intent to distribute.  Within two hours of Kee's arrest, Crompton
removed Smith from the general prison population, placed him in

the Special Housing Unit ("SHU") and advised him that he would remain in SHU pending a complete investigation, at which point Crompton would recommend an out-of-state transfer.  After Smith admitted to setting-up Kee, he allegedly was issued a disciplinary report and subjected to a series of involuntary interstate prison transfers.

On November 5, 1997, Smith was involuntarily transferred to the Connecticut Department of Correction.  He filed a civil rights action against several employees of the Connecticut Department of Correction on July 1, 1998.  See Smith v. Armstrong et al., Civ. No. 3:98-CV-01252-WIG, slip op. at 1 (D. Conn. Sept. 29, 2000).  He was then transferred to the NHSP on August 10, 1999.

While incarcerated at the NHSP on December 15, 1999, Smith was involved in an altercation with a corrections officer and was subsequently disciplined and placed in punitive segregation.  As a result of the disciplinary action against him, he was ordered by Shaw to send home his television.  He successfully challenged Shaw's order through a series of administrative appeals and was permitted to keep his television.  Smith's success in his administrative appeals allegedly angered several corrections officers and resulted in his subsequent transfer.  On March 29,

4

2000, Cantor informed Smith that he must be transferred and permitted him to be placed in a federal facility.  On April 12, 2000, Smith was involuntarily transferred to the United States Penitentiary in Lewisburg, Pennsylvania.

While incarcerated in Pennsylvania on May 6, 2002, Smith filed a civil rights action against the NHDOC and several employees of the NHSP.  See Smith v. Coplan, Civ. No. 02-201-JD, slip op. at 1 (D.N.H. Sept. 12, 2002).  He filed another federal civil rights action on March 19, 2003 against several employees of the Federal Bureau of Prisons and the United States Penitentiary at Lewisburg.  See Smith v. Kathleen M. Hawk Sawyer, et al., Civ. No. 3:CV-03-0525, slip op. at 1 (M.D. Pa. April 30, 2003).  At the request of Lewisburg officials, he was transferred to the NHSP on May 16, 2003.

While incarcerated at the NHSP on October 24, 2003, Smith filed a civil rights action against several employees of the NHSP.  See Smith v. Coplan, Civ. No. 03-466-SM, slip. op. at 1 (D.N.H. Feb. 24, 2004).  During October through December 2004, Curry, Cattell, Crompton, Shaw and Carroll allegedly issued false disciplinary reports against Smith, confiscated and destroyed his legal materials and subjected him to an involuntary transfer to Texas, all in reprisal for his litigation against NHSP employees

5

and/or the filing of administrative grievances.

On December 16, 2004, Smith was transferred to the Estelle Unit in Huntsville, Texas.  While incarcerated there, he allegedly was denied the opportunity to earn prison wages and good time or bonus credit.  In addition, Texas officials seized one hundred percent of the incoming funds in his inmate trust account, thereby interfering with his right to access the courts. On March 17, 2004, he filed a civil rights action in the United States District Court for the Southern District of Texas against several employees of the Texas Department of Criminal Justice – Institutional Division.  See Smith v. Livingston, Civ. No. 4:06-cv-0095 (S.D. Tex. filed March 17, 2006).

Smith now brings the instant action against the NHDOC Commissioner and several NHSP employees, alleging that they violated his federally protected rights by subjecting him to a series of retaliatory transfers, denying him prison wages and good time or bonus credit and further denying him meaning meaningful access to the courts.

**Discussion**

I.   Statute of Limitations

Upon review of the record, it is clear that Smith's First and Fourteenth Amendment retaliation claims arising from his

6

transfers (and related disciplinary actions) on November 5, 1997, August 10, 1999 and April 12, 2000, are time-barred because of his failure to file within the statutory limitations period.

In adjudicating civil rights claims under 42 U.S.C. § 1983, federal courts borrow the statute of limitations applicable to personal injury actions under the law of the forum state.  See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 2 (1st Cir. 1995).  The applicable statute in this case is New Hampshire Revised Statutes Annotated 508:4, I (2003), which establishes a three-year limitations period for personal injury actions in New Hampshire.  Under federal law, which governs the accrual of claims brought pursuant to Section 1983, a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action. See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997).

The limitations period governing an inmate's Section 1983 action may be tolled while he pursues administrative remedies under 42 U.S.C. § 1997e(a)(2000).  See Johnson v. Rivera, 272 F.3d 519, 521 (7th Cir. 2001).  The Prison Litigation Reform Act amended 42 U.S.C. § 1997e(a) to provide that: "No action shall be brought with respect to prison conditions under section 1983 of

7

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." <u>Brown v. Morgan</u>, 209 F.3d 595, 596 (6th Cir. 2000)(quoting 42 U.S.C. § 1997e(a) (1999)); <u>accord</u> <u>Smith v. Ortiz</u>, No. 05-1211, 2006 WL 620871, at *4, (10th Cir. March 14, 2006); <u>Harris v. Hegmann</u>, 198 F.3d 153, 157-59 (5th Cir. 1999).  Prisoners therefore "are prevented from bringing suit in federal court for the period of time required to exhaust 'such administrative remedies as are available'".  <u>Id.</u>  For this reason, the statute of limitations which applies to Smith's civil rights action is tolled for the period during which his administrative remedies were being exhausted.  <u>Brown</u>, 209 F.3d at 596.

Smith concedes that the three above prison transfers and related disciplinary actions occurred on November 5, 1997, August 10, 1999 and April 12, 2000, therefore, his claims accrued no later than the dates of transfer.  Given that he filed the instant complaint on October 24, 2005, after the three-year limitations period had expired for his claims, I conclude that his claims are untimely.  Smith has demonstrated no reason why the limitations period should be tolled.  Accordingly, I recommend that the above First and Fourteenth Amendment

8

retaliation claims be dismissed as time-barred.

II.   Personal Jurisdiction/Duplicate Claims

     Smith alleges that Warden Timothy Morgan and Assistant
Warden E. Guterrez, employees of the Texas Department of Criminal
Justice - Institutional Division ("TDCJ-ID"), have seized one
hundred per cent of the incoming funds in his inmate trust
account at the Estelle Unit, in violation of the ICC and his
Fourteenth Amendment right to due process.  Although Smith has
not named the TDCJ-ID employees in the caption of the complaint,
his claims relate solely to TDCJ-ID employees.  The seizure of
funds allegedly has interfered with Smith's meaningful access to
the courts by preventing him from obtaining necessary documents
from the NHSP.

     A.   Lack of Personal Jurisdiction

     Before a court may exercise personal jurisdiction over a
non-resident defendant, a plaintiff must demonstrate that: (1)
the forum state's long-arm statute confers jurisdiction over the
defendant; and (2) "the exercise of jurisdiction comports with
constitutional due process standards (by establishing that the
defendant has sufficient 'minimum contacts' with the forum
state)."  Massachusetts Bay Inc. Co. v. Portland Water Dist.,
Civ. No. 99-487-M, 2000 WL 1499493 at *2 (D.N.H. May 10,

2000)(citing Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9-10 (1st Cir. 1986)).  The New Hampshire individual long-arm statute, N.H. Rev. Stat. Ann. § 510:4, provides jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow.  Id. (citing Phelps v. Kingston, 130 N.H. 166, 171 536 A.2d 740 (1987)). Accordingly, the court need only determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees."  Id.

Before a court may exercise personal jurisdiction over a foreign defendant, a plaintiff must demonstrate that the defendant had certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Id. (citing Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). "And, before finding that a defendant has such minimum contacts, the court must be satisfied that the defendant's conduct bears such a substantial connection with the forum state that the defendant should reasonably anticipate being haled into court there."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

10

In analyzing minimum contacts, courts have recognized two types of personal jurisdiction: general and specific.  Bertram v. Wall, Civ. No. 01-422ML, 1889030 WL at *4 (D.R.I. July 11, 2002).  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  Here, Smith does not contend that any of the Texas defendants engaged in continuous and systematic activity in New Hampshire, nor does he ask the court to exercise general jurisdiction over them.  I therefore conclude that he has failed to demonstrate general jurisdiction as to the Texas defendants.

Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  Id. at 1088-89.  The First Circuit has formulated a three-part test to determine whether specific jurisdiction exists:

> First, the claim underlying the litigation must
> directly arise out of, or relate to, the defendant's
> forum-state contacts.  Second, the defendant's in-state
> activities must represent a purposeful availment of the
> privilege of conducting activities in the forum state,

> thereby invoking the benefits and protections of that
> state's laws and making the defendant's involuntary
> presence before the state s courts foreseeable.  Third,
> the exercise of jurisdiction must, in light of the
> Gestalt factors, be reasonable.

Massachusetts Bay Inc. Co., 2000 WL 1499493 at *3 (quoting

Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d

284, 288 (1st Cir. 1999)).  Smith has not demonstrated any

contacts by the Texas defendants with the State of New Hampshire.

Nor does his transfer pursuant to the ICC constitute sufficient

contacts by the Texas defendants.  See Sadler v. Rowland, Civ.

No. 3:01CV1786 (CFD)(WIG), 2004 WL 2061127 at *4, (D. Conn. Sept.

13, 2004)(Connecticut interstate corrections compact insufficient

to establish contacts by Virginia corrections officials);

Bertram, 1889030 WL at *4 (interstate corrections compact

insufficient to establish individual contacts by out-of-state

defendants).  I therefore conclude that he has failed to

demonstrate specific jurisdiction as to the Texas defendants.

Because this Court lacks personal jurisdiction over the Texas

defendants, I recommend that they, and the claims against them,

be dismissed from this action.

    B.  Duplicative Claims

    Even assuming that personal jurisdiction exists, Smith's

claims against Morgan and Guterrez must be dismissed because they

12

are identical to claims raised in a parallel action pending before the United States District Court for the District of Texas and, therefore, are duplicative.

"[A] federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993)(quoting Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc., 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)); accord Adeogba v. Migliaccio, 266 F. Supp. 2d 142, (D.D.C. 2003). "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally an action is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'"  Id. (quoting Ridge Gold, 572 F. Supp. at 1213); accord James v. AT & T Corp., 334 F. Supp. 2d 410, 411 (S.D.N.Y. 2004).

Here, the Fourteenth Amendment claims stemming from the seizure of funds from Smith's inmate trust account are identical to the claims raised in his parallel action pending before the United States District Court for the Southern District of Texas, see Smith v. Livingston, Civ. No. 4:06-cv-0095 (S.D. Tex. filed

13

March 17, 2006).  In that action, Smith has sued TDCJ-ID employees, alleging that they seized one hundred per cent of the funds from his inmate account, in violation of the ICC and his Fourteenth Amendment right to due process.  While the Texas action names additional TDCJ-ID defendants, both actions specifically identify Morgan and Guterrez in the body of the complaint and allege identical claims against them.  Because the claims, parties, and available relief do not significantly differ between Smith's Texas action and this action, I conclude that the instant claims are duplicative.  Accordingly, I recommend that Smith's Fourteenth Amendment due process claims stemming from the seizure of funds from his inmate trust account be dismissed.

III. Section 1983 Claims

        To state a claim under Section 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity secured by the Constitution.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, the defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Serv., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62

(1st Cir. 1997).

A.   Retaliation

Smith alleges that Curry, Cattell, Crompton, Shaw and Carroll issued false disciplinary reports against him and subjected him to involuntary transfers, or condoned such actions, in reprisal for his litigation against NHSP employees and/or the filing of administrative grievances.

Prison administrators have broad discretion in deciding where to place prisoners within the correctional system.  See Ainsworth v. Risley, 244 F.3d 209, 221-22 (1st Cir. 2001).  While a prisoner has no right to a hearing before he is transferred and may be transferred for any or no reason at all, he nevertheless may establish a retaliatory transfer claim if the decision to transfer was made because he exercised his constitutionally protected First Amendment freedoms.  See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979).  In McDonald, the First Circuit stated:

> While the discretion afforded prison administrators in transfer decisions is extremely broad, it 'does not swallow the inmate's fundamental right of access to the courts.  Otherwise, prison administrators would be free to accomplish exactly what plaintiff alleges here, the transfer of successful, and therefore, troublesome litigants for no reason other than their legal activities." [citation omitted]  Since appellant does have a constitutional right to petition the courts,

> Bounds v. Smith, 430 U.S. 817, 821–22, 97 S.Ct. 1491,
> 52 L.Ed.2d 72 (1977); Furtado v. Bishop, 604 F.2d 80
> (1st Cir. 1979), and since he alleges that the transfer
> was ordered in retaliation for his exercise of that
> right, he properly stated a cause of action.

Id. at 18.

"[I]t is well established that prison officials must provide

inmates access to the courts, and prison officials may not harass

or retaliate against an inmate for exercising his right of access

to the courts." Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir.

1996)(internal citations omitted).  To prevail on a retaliation

claim, an inmate must show: (1) conduct which led to the alleged

retaliation was constitutionally protected; (2) that he suffered

some adverse action at the hands of prison officials; and (3)

that his constitutionally protected conduct was a substantial or

motivating factor in the decision to discipline or transfer him.

See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Rauser v.

Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Here, Smith alleges that defendants issued false

disciplinary charges against him and involuntarily transferred

him in reprisal for his litigation against NHSP employees and

filing administrative grievances.  After Smith filed a grievance

against Carroll on August 2, 2004, Carroll retaliated against him

on October 12, 2004 by destroying his legal documents and

16

materials.  In October and November 2004, Smith allegedly notified Shaw and Cattell of Carroll's actions, however they failed to remedy the problem.  On November 1, 2004 Carroll issued a disciplinary report against Smith and placed him punitive segregation.  When Smith returned to his cell on or about November 7, 2004, he discovered a letter from his attorney, Alan Linder, Esquire, floating in the toilet.  In a series of grievances filed in November and December 2004, Smith notified Curry and Cattell of Carroll's actions, however they failed to remedy the problem.  On November 18, 2004, Carroll issued another disciplinary report against Smith.  On November 30, 2004, Linder wrote to Vinson, informing him of Carroll's mistreatment of Smith.  On December 8, 2004 Carroll issued another disciplinary report against Smith.  On December 16, 2004, defendants transferred Smith to the Estelle Unit in Texas, ostensibly on the basis that he set-up a prison employee.

Smith alleges that defendants transferred him to Texas in retaliation for his prosecution of claims against NHSP employees and for filing administrative grievances while incarcerated at the NHSP.  He further alleges that defendants falsified and fabricated the disciplinary reports against him (or condoned such actions) in retaliation for the prosecution of his civil rights

17

actions and administrative grievances against the NHSP and its employees.  To the extent the decision to transfer and discipline him was made in reprisal for his exercise of constitutionally protected First Amendment freedoms, Smith may establish a retaliation claim.  If true, his allegations may well give rise to viable First and Fourteenth Amendment retaliation claims against Curry, Cattell, Shaw and Carroll.  Because the retaliation claim against Crompton arises out of Smith's prison transfer on November 5, 1997, I conclude that it is barred under the statute of limitations (for the reasons discussed above) and recommend that this claim be dismissed.

     B.   Equal Protection

Smith alleges that defendants have abridged his right to equal protection, under the ICC and Fourteenth Amendment, by denying him certain privileges afforded to similarly situated inmates.  While incarcerated in Texas, he allegedly has been denied prison wages (a privilege granted to New Hampshire inmates) and an opportunity to earn good time and bonus time (a privilege granted to Texas inmates).[2]  Because Smith has not

---

[2]To the extent Smith challenges the fact of conviction or confinement or the duration of confinement, his claims are cognizable only under the habeas statutes.  See Heck v. Humphrey, 512 U.S. 477, 481 (1994); Preiser v. Rodriguez, 411 U.S. 475,

identified a specific defendant, I liberally construe his claim
to be brought against Cattell in his representative capacity.

The Equal Protection Clause of the Fourteenth Amendment
mandates that similarly situated persons be treated alike absent
a rational basis for doing otherwise.  See City of Cleburne v.
Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)(citing
Plyler v. Doe, 457 U.S. 202, 216 (1982)); accord Village of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(recognizing equal
protection claim where plaintiff alleges that [he] has been
intentionally treated differently from others similarly situated
and there is no rational basis for the difference in treatment).
For equal protection purposes, inmates transferred pursuant to an
interstate compact are similarly situated to inmates in the
receiving state, see Stewart v. McManus, 924 F.2d 138, 142 (8th
Cir. 1991) and Tucker v. Angelone, 954 F. Supp. 134, 136 (E.D.
Va. 1997).  "Since there is no suspect classification here
involved, nor any deprivation of fundamental rights, the ordinary
equal protection test is extremely deferential.  The standard
formula is that a non-suspect classification is unconstitutional
only if no legitimate basis can be imagined to support it."

--------

498-99 (1973); accord, Nelson v. Campbell, 541 U.S. 637 (2004).

Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir. 1994); accord Roy
v. Stanley, 110 Fed. Appx. 139 at *2-3 (1st Cir. 2004)
(unpublished).

Here, Smith was transferred from New Hampshire to Texas
pursuant to the Interstate Corrections Compact ("ICC").  See N.H.
Rev. Stat. Ann. § 622-B:2 et seq. (2005); Tex. Code Crim. Proc.
Ann. art. 42.19 (Vernon's 2005).  Section IV(e) of the ICC
provides that inmates confined pursuant to its provisions "shall
be treated equally with such similar inmates of the receiving
state as may be confined in the same institution.  Pursuant to
the ICC, New Hampshire and Texas executed an agreement
authorizing Smith to be incarcerated in Texas.  See Agreement
between the State of Texas and the State of New Hampshire
pursuant to the interstate Corrections Compact ("Agreement").
Paragraph 15 (a) of the Agreement provides:

> The receiving state will afford prisoners from the
> sending state the opportunity to participate in
> programs of occupational training and industrial or
> other work on the same basis as prisoners of the
> receiving state.  Compensation in connection with such
> participation (whether payment of money, intangible
> incentives, or other therapeutic or rehabilitative
> reasons) will be paid to prisoners of the sending state
> on the same basis as to prisoners of the receiving
> state.

Construed liberally, the complaint alleges that the ICC

entitles Smith to the same benefits as other similarly situated inmates and that he has been denied such benefits in violation of his Fourteenth Amendment right to equal protection.  First, he alleges that he is similarly situated to inmates in the receiving state (Texas) but has been denied the opportunity to earn good time and bonus time, a privilege afforded to other Texas inmates. The record is silent as to any rational basis for denying him the same privileges afforded to other similarly situated inmates.  If true, these allegations may well give rise to a viable Fourteenth Amendment equal protection claim against Cattell.

Second, Smith alleges that he is similarly situated to inmates in the sending state (New Hampshire) but has been denied prison wages, a privilege afforded to New Hampshire inmates. Section IV(e) of the ICC provides that inmates confined pursuant to its provisions "shall be treated equally with such similar inmates of the *receiving* state . . ."  The fact that Smith is not receiving the same privileges as New Hampshire inmates "is irrelevant for purposes of the ICC" and his related equal protection argument.  Leslie v. Wisconsin Dep't of Corrections, 2000 WL 689185, at *3 (7th Cir. 2000) (unpublished) (fact that plaintiffs were not given the same treatment as similarly situated inmates in *sending* state was irrelevant for purposes of

the ICC and equal protection).  I conclude therefore that Smith has failed to state a cognizable equal protection claim stemming from the denial of prison wages.

Lastly, to the extent Smith alleges a violation arising solely under the ICC, I conclude that he has failed to state a claim upon which relief maybe granted.  Courts have held that violations of the ICC do not constitute violations of federal law and therefore are not actionable under Section 1983.  See Halpin v. Simmons, 33 Fed. Appx. 961 (10th Cir. 2002) (unpublished) (violation of ICC not a violation of federal law which could be subject of Section 1983 action); Ghana v. Pearce, 159 F.3d 1206, 1208 (9th Cir. 1998)(violation of ICC could not provide basis for state prisoner's Section 1983 action as ICC itself did not constitute federal law); Jennings v. Lombardi, 70 F.3d 994, 995 (8th Cir. 1995)(ICC has not been transformed into federal law and cannot be basis for inmate's Section 1983 civil rights claims); Stewart, 924 F.2d at 142.  Accordingly, I recommend that Smith's claims arising under the ICC be dismissed.

C.   Interstate Transfer

Construed liberally, the complaint alleges that defendants violated Smith's Fourteenth Amendment rights to due process by transferring him to a Texas facility, where is subjected to a

more restrictive environment, or failing to return him to New
Hampshire.  Smith complains that Texas inmates are denied
telephone access, family visits and the use of a television while
in their cell.

It is well settled that the decision on where to place
inmates within a correctional system is a matter of discretion
for prison officials.  <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976);
<u>Montanye v. Haymes</u>, 427 U.S. 236, 242-43 (1976).  The due process
rights of prisoners are subject to reasonable restrictions, <u>Bell
v. Wolfish</u>, 441 U.S. 520, 546-47 (1979), and the "transfer of an
inmate to less amenable and more restrictive quarters for
nonpunitive reasons is well within the terms of confinement
ordinarily contemplated by a prison sentence."  <u>Hewitt v. Helms</u>,
459 U.S. 460, 468 (1983).  An inmate's transfer to another
facility does not in itself implicate a liberty interest, even
where that transfer results in the loss of "'access to
vocational, educational, recreational, and rehabilitative
programs.'"  <u>McKune v. Lile</u>, 536 U.S. 24, 39-40 (2002)(citing
<u>Hewitt</u>, 459 U.S. at 468; <u>accord</u> <u>Dominique v. Weld</u>, 73 F.3d 1156,
1160 (1st Cir. 1996) (transfer of prisoner to more secure prison
did not constitute an atypical, significant deprivation giving
rise to a protected liberty interest).

Here, it appears that the restrictions to which Smith was subjected during his incarceration in Texas were reasonable. While the Texas facility may present a more restrictive environment than the NHSP, the restrictions allegedly imposed upon Smith appear to be reasonable and well within the discretion of prison officials.  Accordingly, his due process claim stemming from his interstate transfer fails to implicate a liberty interest within the meaning of the Fourteenth Amendment.  To the extent Smith's claim is based on his transfer to a different, more restrictive confinement facility, I conclude that he fails to state a cognizable Fourteenth Amendment claim.

D.   Access to the Courts

Smith alleges that defendants seized and destroyed his legal documents while he was incarcerated at the NHSP.  As a result of defendants' actions, he was required to send legal documents to his attorney, Alan Linder, Esquire of New Hampshire Legal Assistance, for safekeeping.  It appears that Smith intends to state a cause of action for a violation of his First Amendment right to access the courts.

It is well established that inmates have a constitutional right to meaningful access to the courts.  See Bounds v. Smith, 430 U.S. 817, 821 (1977); Boivin v. Black, 225 F.3d 36, 42 (1st

Cir. 2000).  A cause of action for a violation of the right to access courts may exist where prison officials confiscated or destroyed legal materials or papers.  See <u>Simmons v. Dickhaut</u>, 804 F.2d 182, 183 (1st Cir. 1986) (allegations of intentional refusal to return inmate's legal materials stated a cause of action under Section 1983).  To establish standing for an access to courts claim, an inmate must show that he has suffered actual injury traceable to the challenged conduct of prison officials – that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials.  <u>Lewis v. Casey</u>, 518 U.S. 343, 351–53 (1996).

Here, Smith alleges that his legal documents were seized or destroyed but does not allege any ensuing harm.  The record reflects that beginning on July 1, 1998, he has filed multiple federal civil rights actions against various prison officials in Connecticut, New Hampshire, Pennsylvania and Texas.  In addition to his federal suits, he has filed suits in state court.  Smith has not alleged that defendants' purported misconduct has frustrated or impeded any legal claim or otherwise resulted in harm.  To the contrary, he concedes that he has filed numerous actions, all of which contain lengthy pleadings and voluminous supporting documents and exhibits.  I therefore conclude that

Smith has failed to allege a denial of access to the courts claim based on the defendants' alleged seizure and/or destruction his legal materials.  Accordingly, I recommend dismissal of this claim in its entirety.

III. Official Capacity

Construed liberally, the complaint seeks declaratory and injunctive relief for wrongs committed by the defendants as state actors in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  It appears that Smith seeks only declaratory and injunctive relief.  To the

26

extent he intends to bring official capacity claims for monetary relief against the defendants, all of whom are officials or employees of the NHDOC or NHSP, I recommend that those claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989).  Thus, Smith is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

### Conclusion

For the reasons stated above, I conclude that Smith has alleged the following claims: (1) First and Fourteenth Amendment retaliation claims against Curry, Cattell, Shaw and Carroll; and (2) a Fourteenth Amendment equal protection claim against Cattell.  I recommend dismissal of all remaining claims.  I grant Smith's motions to clarify and supplement the record (document nos. 6 and 9).

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the

plaintiff disagrees with the identification of the claims herein,
plaintiff must do so by filing an objection within ten (10) days
of receipt of this report and recommendation, or by properly
moving to amend the complaint.

Any further objections to this report and recommendation
must be filed within ten (10) days of receipt of this notice.
Failure to file objections within the specified time waives the
right to appeal the district court's order.  <u>See</u> 28 U.S.C. §
636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979
F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,
792 F.2d 4, 6 (1st Cir. 1986).

_James R. Muirhead_____

James R. Muirhead
United States Magistrate Judge

Date: April 25, 2006

cc:   Dennis A. Smith, *pro se*

28