**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Dennis A. Smith

    v.                              Civil No. 05-cv-374-JD

New Hampshire State Prison, et al.


**REPORT AND RECOMMENDATION**

Pro se prisoner Dennis A. Smith ("Smith") filed a complaint pursuant to 42 U.S.C. § 1983, claiming his constitutional rights were violated when the New Hampshire State Prison ("NHSP") transferred him to Texas on December 16, 2004. Smith moved for preliminary injunctive relief (doc. no. 37), seeking an immediate transfer back to the NHSP. A hearing was held on September 26, 2006, to determine whether the preliminary injunction should issue. After carefully considering the claims and evidence presented, I recommend Smith's motion for a preliminary injunction be denied and his complaint be dismissed.

## Analysis

### 1. Standard of Review

Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of

the matter.  Such a situation arises when some harm from the
challenged conduct could not be adequately redressed with
traditional legal or equitable remedies following a trial.  <u>See</u>
<u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18
(1st Cir. 1996) (finding irreparable harm where legal remedies
are inadequate); <u>see</u> <u>also</u> <u>Acierno v. New Castle County</u>, 40 F.3d
645, 653 (3rd Cir. 1994) (explaining irreparable harm and its
effect on the contours of preliminary injunctive relief)[1].
Absent irreparable harm, there is no need for a preliminary
injunction.

The need to prevent irreparable harm, however, exists only
to enable the court to render a meaningful disposition on the
underlying dispute.  <u>See</u> <u>CMM Cable Rep., Inc. v. Ocean Coast</u>
<u>Prop., Inc.</u>, 48 F.3d 618, 620-1 (1st Cir. 1995)(explaining the
purpose of enjoining certain conduct as being to "preserve the
'status quo' . . . to permit the court more effectively to remedy
discerned wrongs"); <u>see</u> <u>also</u> <u>Becton v. Thomas</u>, 48 F. Supp. 2d
747, 753 (W.D. Tenn. 1999) ("'The purpose of a preliminary

---

[1]"Mere injuries, however substantial, in terms of money,
time and energy necessarily expended in the absence of a stay,
are not enough.  The possibility that adequate compensatory or
other corrective relief will be available at a later date, in the
ordinary course of litigation, weighs heavily against a claim of
irreparable harm."  <u>Acierno</u>,40 F.3d at 653.

injunction is always to prevent irreparable injury so as to
preserve the court's ability to render a meaningful decision on
the merits.'" (quoting <u>Stenberg v. Cheker Oil Co.</u>, 573 F.2d 921,
925 (6th Cir. 1978)).  The court's focus, therefore, must always
be on the underlying merits of the case, and what needs to be
done to ensure that the dispute can be meaningfully resolved.

A preliminary injunction cannot issue unless the moving
party satisfies four factors which establish its need for such
relief.  <u>See</u> <u>Esso Standard Oil Co. (Puerto Rico) v. Monroig-</u>
<u>Zavas</u>, 445 F.3d 13, 17–18 (1st Cir. 2006) (discussing the
requisite showing to obtain a preliminary injunction); <u>see also</u>
<u>Ross-Simons of Warwick, Inc.</u>, 102 F.3d at 18–19 (explaining the
burden of proof for a preliminary injunction).  Those factors
are:  "(1) the likelihood of success on the merits; (2) the
potential for irreparable harm [to the movant] if the injunction
is denied; (3) the balance of relevant impositions, i.e., the
hardship to the nonmovant if enjoined as contrasted with the
hardship to the movant if no injunction issues; and (4) the
effect (if any) of the court's ruling on the public interest."
<u>Esso Standard Oil Co.</u>, 445 F.3d at 18.  If the plaintiff is not
able to show a likelihood of success on the merits, the remaining

factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own. See id. (the "sine qua non of the four-part inquiry is likelihood of success on the merits").  Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  Ross-Simons of Warwick, Inc., 102 F.3d at 19.

## Evidence

On his direct examination Smith testified that when he was last transferred back to New Hampshire he was scheduled for transfer to Oregon.  Before that occurred he met with Warden Coplan.  She agreed to keep him in New Hampshire if he maintained acceptable behavior.  Smith claims that after Warden Coplan was transferred to a different facility and after Majors Shaw and Moyer were no longer at SHU, he began to be harassed by Major Moquin, Officer Carr and others.  The Acting Warden, Crompton, and then the new Warden Cattell, he said, failed to stop that harassment.  Smith testified that a number of charges resulted which he claims were trumped-up and which, he says, became the basis for his transfer to Texas.

In fact, soon after Warden Coplan left in June 2004, he did

receive a number of write-ups.

1.   <u>July 25, 2004</u>

Smith was charged and, after a hearing, convicted of threatening staff.  The incident arose over Smith's complaints about staff's refusal to sharpen his pencil.

2.   <u>August 9, 2004</u>

Smith was charged and, after a hearing, convicted of having a razor blade (hidden among some batteries), an item prohibited in SHU and also of having a guard's home address and phone number.  The latter, which he obtained from a news article, was written on the inside of an envelope. Possession of such information is deemed contraband and threatening.

3.   <u>August 13, 2004</u>

Smith was charged, and after a hearing, convicted of threatening Unit Manager Moquin by saying "I'll get your home address too".

4.   <u>August 19, 2004</u>

Smith was charged and convicted of lying about the source of the razor blade.

Mr. Smith offered explanations that the August 19th charge arose from a miscommunication, that the August 13th was simply advising Moquin that another inmate had his address, that the first address came from the newspaper and that he did not know razor blades were not allowed in SHU and it came in his laundry.  I do not find Smith credible because the address and razor were secreted away.

Additionally, he shortly thereafter, in October of 2004 threatened that he would mix his infected blood and feces and throw it at staff.

Requests were sent out to states for a reciprocal prisoner transfer and on December 16, 2004 Smith was transferred.

I find that the transfer was not retaliatory for his litigation, but for his misbehavior.  The charges were not trumped-up.  They were appropriate.  Smith has not shown likelihood of success on the merits or irreparable harm.  The defendant had justifiable penological reasons for his behavior.

## Conclusion

Since Smith failed to demonstrate any risk of irreparable harm or any likelihood of success on the merits of his claims, I recommend that his motion for preliminary injunctive relief be

6

denied.  I further recommend that his complaint be dismissed for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b); see also LR 4.3(d)(2).

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge


Date:  November 3, 2006

cc:   Dennis A. Smith, pro se
      Andrew B. Livernois, Esq.

7