UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Dennis A. Smith

     v.                                Civil No. 05-cv-374-JD

Warden, New Hampshire State Prison

O R D E R

Dennis A. Smith, proceeding pro se, brings claims pursuant to 42 U.S.C. § 1983 against New Hampshire State Prison Warden, Bruce Cattell, New Hampshire Department of Corrections Commissioner, Stephen J. Curry, and New Hampshire State Prison staff members Christopher Shaw and Paul Carroll.  He alleges that he was transferred to a prison in Texas in retaliation for litigation he brought against another prison staff member, in violation of the First Amendment, and that he is treated differently than other New Hampshire inmates, in violation of the Fourteenth Amendment.  Smith and the defendants have moved for summary judgment.  The defendants object to several statements in Smith's declaration filed in support of his motion.  Smith moves to strike any inference that might be drawn from his housing classification and moves for a hearing to obtain the testimony of a former prison official.

I.   Defendants' Objections to Smith's Declaration and Amended
Declaration, Plaintiff's Motion for a Hearing, and Plaintiff's
Motion to Strike

     The defendants objected to parts of seven paragraphs in
Smith's declaration submitted in support of his motion for
summary judgment.[1]  In response, Smith moved to amend and
supplement his declaration, which was allowed.  The defendants
also object to parts of two paragraphs in Smith's supplemental
declaration, claiming that they are inadmissible hearsay or lack
necessary foundation.  Smith moves for a hearing and to strike a
negative inference that might arise from his housing
classification.

A.   Declaration

     The defendants object to statements in paragraphs 12, 13,
16, 22, 26, 27, 31, and 37 in Smith's declaration.  Paragraph 12
is stricken to the extent it purports to give an unnamed
officer's intent.  Paragraph 13 is allowed only to the extent it
is based on personal knowledge that the commissioner came to
Smith's cell.  Paragraph 16 is allowed only to the extent that it

_____

     [1]Because Smith's declaration complies with the requirements
of 28 U.S.C. § 1746, the defendants' objection that it is unsworn
is unfounded.

establishes that the warden came to Smith's cell.  Paragraph 22 appears to be hearsay but will be allowed.  Paragraph 26 is allowed only to the extent it is based on Smith's personal knowledge that staff were resentful or hostile toward him and is otherwise stricken.  Paragraph 27 is hearsay except for Smith's knowledge that Warden Coplan was accompanied by Major Dan Shaw when she met with Smith.  Paragraph 31 also contains hearsay and statements that do not indicate the basis for Smith's knowledge, which are stricken, leaving his statements that staff refused to sharpen his pencils, "attacked" his legal files, put a letter of his in the toilet, and damaged his fan and his Walkman.

Paragraph 37 pertains to statements made by Matt Moyer, the manager of the Special Housing Unit ("SHU"), during part of the time that Smith was housed in SHU.  Although those statements are hearsay, as explained in section C below, the statements will be considered for purposes of summary judgment.

B.  Amended Declaration.

The statements in Smith's amended declaration to which the defendants object are also about Moyer.  Smith contends Warden Coplan communicated to Moyer that Smith could remain at the New Hampshire State Prison as long as he remained of "acceptable behavior," meaning that Smith would not incur disciplinary write-

ups, would participate in "programming," and would work his way to a reduced custody classification.  Smith alleges that Moyer then told him that Moyer would not recommend reduced custody classification until Smith participated in anger management programming.  Smith also alleges that Moyer said he did not know when an anger management program would be available in SHU but would let Smith know when that happened.  Again, those statements are hearsay and are addressed in the next section.

C.  <u>Motion for a Hearing and Motion to Strike</u>

In response to the defendants' objections, Smith moves for a hearing to obtain Moyer's testimony about the matters he asserts in his declarations.  He also moves to strike any negative inference, that he was noncompliant with prison rules and regulations, based on his housing classification in SHU.  The defendants object to Smith's motion to strike but filed no response to his motion for a hearing.

Smith represents that his mother contacted Moyer by sending him a letter asking him to corroborate the statements attributed to him, and after receiving no response, called Moyer at the Laconia Police Department where he worked.  Smith states that his mother learned that Moyer could not respond because he was precluded from having contact with Smith for three years.  <u>See</u>

4

Motion to Strike, doc. no. 94. ¶ 13.  Smith argues that a hearing is necessary to obtain Moyer's testimony and that no negative inference should be taken from his continued SHU classification because he could not meet the program requirement.

If a party needs additional time to acquire and present evidence in opposition to summary judgment, relief is available under Federal Rule of Civil Procedure 56(f).  Rule 56(f) applies, however, only if the party submits an affidavit showing good cause for the lack of evidence, a plausible basis for his belief that the needed evidence can be presented with more time, and an explanation of why additional facts are material to his opposition.  Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007).  A litigant's pro se status does not absolve him from complying with the federal rules.  FDIC v. Anchor Props., 13 F.3d 27, 31 (1st Cir. 1994).

Smith did not provide an affidavit in support of his request for a hearing.  For purposes of the pending summary judgment motions, nevertheless, the court will take the statements in Smith's declaration, paragraph 37, and amended declaration, paragraphs 3 and 4, about Moyer's statements to him as true and will not draw a negative inference from Smith's housing classification in SHU.  Therefore, Smith's motion for a hearing is denied, and his motion to strike is granted.

5

II.   Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When parties file cross-motions for summary judgment, the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004); Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).

An evidentiary hearing was held before the magistrate judge by video conference on September 26, 2006, on Smith's motion for a preliminary injunction.  Smith, former New Hampshire State Prison Warden Jane Coplan, and Administrator of Classifications Kim LaCasse testified.  The magistrate judge issued a report and recommendation that Smith's motion should be denied.  After an initial remand and a further report and recommendation, the court approved the report and recommendation and denied Smith's motion for a preliminary injunction on January 30, 2007.

<u>Background</u>

Smith is a New Hampshire inmate being housed in a Texas prison.  In 1997, New Hampshire State Prison officials discovered that Smith was involved in a relationship with a prison staff member who smuggled contraband into the prison.  As a result, Smith was moved to SHU in June of 1997 and was transferred to a prison in Connecticut in November of 1997.  Connecticut authorities returned Smith to New Hampshire in August of 1999. In December of 1999, Smith assaulted a corrections officer at the New Hampshire State Prison and was transferred on April 12, 2000, to a federal prison in Lewisburg, Pennsylvania.

The federal prison returned Smith to New Hampshire in March of 2003.  New Hampshire State Prison officials attempted to transfer Smith to a prison in Oregon.  Smith wrote a letter to the Oregon prison officials, stating that he would make their lives miserable, and they decided not to accept his transfer. Warden Coplan testified at the September 26, 2006, hearing that it was difficult to arrange transfers for an inmate like Smith who had a disciplinary background and a history of negative interactions with prison staff.

On July 23, 2003, Warden Coplan and Major Shaw met with Smith.  Coplan told Smith that he would not be transferred from New Hampshire as long as he maintained "acceptable behavior."

Coplan explained that her expectations for acceptable behavior were that Smith would remain discipline free, that he would do the programs he needed to do, and that he would maintain a positive relationship with the prison staff.  Coplan told Moyer that she would not transfer Smith away from New Hampshire as long as he met her requirements for acceptable behavior.

Coplan testified that Smith told her he would never leave SHU because he could not get along with other inmates and it would put him at risk to be in the general prison population. Smith contends that Moyer told him that he (Moyer) would not recommend Smith for reduced custody status until Smith completed an anger management program which was not then available in SHU. Smith did not leave SHU until he was transferred to a prison in Texas at the end of 2004.

Smith brought suit against Moyer and Coplan in October of 2003, alleging unsanitary conditions in food preparation for the inmates in SHU.  See Smith v. Warden, 03-cv-466-SM (filed Oct. 24, 2003).  That case was terminated in June of 2005 after the defendants addressed Smith's complaints and Smith withdrew his complaint.  In May of 2004, Coplan was appointed warden of the Lakes Region facility in Laconia and was replaced by Warden Cattrell.  Moyer retired soon after Coplan left the Concord facility.

8

On July 25, 2004, Corrections Officer Carroll reported Smith for threatening an officer.  Smith was found guilty of that charge after a hearing.  On August 9, Carroll reported that Smith had a razor blade and personal information (the home address) about a corrections officer hidden in his cell.  Smith admitted having the razor blade.  Four days later, Unit Manager Moquin made a disciplinary report that Smith threatened him, saying that he would get Moquin's address too, and Smith was found guilty after a hearing.  On August 19, Corrections Officer Shaw filed a disciplinary report charging Smith with lying about the razor blade, and Smith was found guilty on that charge.

In late September of 2004, prison staff began the process of finding a receiving facility to allow them to transfer Smith out of New Hampshire.  At the same time, Texas was seeking placement of a Texas prisoner in New Hampshire, and, therefore, the prison asked Texas to take Smith in exchange.  In early November, 2004, Texas officials informed officials at the New Hampshire State Prison that Texas would take Smith.  He was transferred to Texas on December 16, 2004.[2]

---

[2]In the meantime, Smith incurred additional disciplinary reports.  Smith threatened to mix his blood with human feces and to throw the mixture at the prison staff.  He received a disciplinary report for that threat on October 26, 2004, and then received disciplinary reports on November 1, November 18, and December 8, before he was transferred to Texas.

A.   <u>Smith's Motions to Supplement and to Preserve</u>

On January 25, 2008, Smith moved to amend and supplement his motion for summary judgment to add five large envelopes of documents each containing undifferentiated piles of hundreds of pages.  Smith states that he received the documents on January 6, 2008, from the defendants' present counsel.  He also states that a former counsel for the defendants had previously refused to provide those documents in discovery.  He also moves to preserve the documents as his discovery materials.

Smith contends, in conclusory terms and without citation to any of the documents specifically, that the documents show that other inmates had serious disciplinary histories and were not transferred to prisons outside of New Hampshire.  He argues that the evidence supports his theory that he was transferred to Texas in retaliation for filing suit in this court.  Smith provides no analysis of the documents he has submitted.

Despite Smith's pro se status, he is required to present his arguments and evidence in compliance with the federal rules.  <u>See</u> <u>FDIC v. Anchor Props.</u>, 13 F.3d 27, 31 (1st Cir. 1994).  A general reference to hundreds of pages of documents is not a sufficiently developed argument nor a proper means for submitting evidence for purposes of either supporting or opposing summary judgment.  Fed. R. Civ. P. 56; LR 7.2(b).  Therefore the motion is denied.

10

Because the court does not serve as a repository for discovery materials, the motion asking the court to preserve the submitted documents is also denied.  The materials will be returned to Smith or will be sent to a person of his choosing who has agreed to accept them.

B.  Smith's Motion for Summary Judgment

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the party moving for summary judgment also bears the burden of proof at trial, summary judgment will not be granted unless, based on the record taken in the light most favorable to the nonmoving party, no reasonable jury could find for the nonmoving party. See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002); Winnacunnet v. National Union, 84 F.3d 32, 35 (1st Cir. 1996).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Smith's claims under § 1983 against the warden, the commissioner, and prison officers Shaw and Carroll are that he

was transferred to a prison in Texas in retaliation for the suit
he filed against Coplan and Moyer.  Smith contends that the
transfer violated his First Amendment rights and that in Texas he
is treated differently than the Texas inmates in violation of the
Fourteenth Amendment.  The defendants object to Smith's motion.

### 1.   Retaliatory Transfer

To succeed on a claim of retaliatory transfer in violation
of the First Amendment, a prisoner must prove that (1) he engaged
in conduct protected by the First Amendment, (2) adverse action
was taken against him that was sufficient to chill his exercise
of protected conduct, and (3) there is a causal connection
between his protected conduct and the adverse action.  Thaddeus-X
v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999); see also Rhodes v.
Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  The adverse
action must also be inconsistent with legitimate penological
purposes.  Id. at 568.  Transfer of a prisoner to another
facility in retaliation for exercising his First Amendment right
is actionable under § 1983.  McDonald v. Hall, 610 F.2d 16, 18
(1st Cir. 1979); see also Toolasprashad v. Bur. of Prisons, 286
F.3d 576, 585 (D.C. Cir. 2002); Gomez v. Vernon, 255 F.3d 1118,
1127 (9th Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225-26

(3d Cir. 2000); <u>Babcock v. White</u>, 102 F.3d 267, 275 (7th Cir. 1996).

In this case, the only disputed issue is whether a causal connection exists between Smith's protected conduct, his suit filed in October of 2003 against Coplan and Moyer, and the prison's decision to transfer him to Texas the next year.  The defendants assert, based on Smith's disciplinary record and LaCasse's testimony, that the decision to transfer Smith was made because he did not maintain a clear disciplinary record or participate in required programming.  Smith contends that the disciplinary problems he encountered during the summer and fall of 2004 were the result of being housed in SHU and were instigated by prison staff.  He also contends that he could not participate in an anger management program, which would have allowed him to work to a less restrictive classification, because that program was not available in SHU.

The record amply supports the disciplinary basis for Smith's transfer.  Despite the prison's initial efforts to transfer Smith when he returned to New Hampshire in the spring of 2003, he was not transferred until a year and a half later, after he incurred a series of disciplinary reports.  His allegations that the disciplinary reports were unfounded are not supported by the

13

record.[3]  Assuming that Moyer required Smith to participate in an
anger management program before he could progress out of SHU, as
Smith alleges, Smith does not explain why was unable to move out
of SHU after Moyer retired in the spring of 2004 and a new unit
manager was appointed.  Instead, the record shows that after
Coplan and Moyer left, Smith had a series of serious disciplinary
infractions which led to the decision to transfer him out of the
New Hampshire State Prison.

To succeed on his motion, Smith would have to provide
conclusive evidence that he was transferred to Texas in
retaliation for filing suit against Coplan and Moyer.  See Union
Independiente, 279 F.3d at 55.  Smith has fallen far short of
that requirement.  Therefore, his motion for summary judgment on
the retaliation claim is denied.

2.  Equal Protection

Smith asserts that his incarceration in Texas violates his
right to equal protection under the Fourteenth Amendment because
he is not treated the same as Texas inmates in the prison where

_____

[3]Although Smith contends that his disciplinary infractions
were the result of harassment and retaliation by prison staff, he
has provided no persuasive evidence to support his allegations.

14

he is currently housed.[4]  More specifically, Smith contends that
Texas inmates are compensated for their prison work with good
time credit against their sentences but he is not because New
Hampshire law does not allow credit against his New Hampshire
sentence.[5]  Smith argues that his transfer to Texas violates his
right to equal protection and that he must be returned to the New
Hampshire State Prison.

Because Smith is not a member of a suspect class and has not
premised his equal protection claim on the deprivation of a
fundamental right, any difference in treatment is subject to a
deferential analysis.[6]  Beauchamp v. Murphy, 37 F.3d 700, 707

---

[4]In his motion, Smith also argues that his transfer to a
prison in Texas violates due process under the Fourteenth
Amendment.  No such claim was allowed on preliminary review of
Smith's complaint.  In addition, transfer of a prisoner from one
state to another "does not deprive an inmate of any liberty
interest protected by the Due Process Clause."  Olim v.
Wakinekona, 461 U.S. 238, 248 (1983).

[5]In addition, Smith argues that the Interstate Corrections
Compact, RSA 622-B:2, and the agreement between Texas and New
Hampshire for transferring inmates require that he be treated the
same as Texas inmates.  That claim was not allowed on initial
review.  Any violations of the ICC and the transfer agreement are
not violations of federal law and are not actionable under §
1983.  Smith v. Cummings, 445 F.3d 1254, 1259 (10th Cir. 2006).

[6]Smith states that he is a member of a suspect class of
inmates who have been transferred to an out-of-state prison
pursuant to the Interstate Corrections Compact.  Transferred
inmates in comparison to other inmates, however, are not a
specially protected class.  See, e.g., Trujillo, 465 F.3d at 1228

15

(1st Cir. 1994).  Such claims are reviewed to determine whether a
rational relationship exists between disparate treatment and a
legitimate government purpose.  <u>Toldeo v. Sanchez</u>, 454 F.3d 24,
33 (1st Cir. 2006); <u>see also</u> <u>Trujillo v. Williams</u>, 465 F.3d 1210,
1228 (10th Cir. 2006) (holding that inmate can show equal
protection violation under rational basis standard only by
showing that he was subjected to different treatment that was not
reasonably related to a legitimate penological purpose).  As a
class of one, Smith must prove that the defendants are
intentionally treating him differently from other similarly
situated inmates and that they lack a legitimate reason for doing
so.  <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st Cir. 2006).

Smith is a New Hampshire prisoner, serving a sentence
imposed under New Hampshire law, while he is housed in a prison
in Texas.  It is undisputed for purposes of the present motions
that inmates in the Texas prison where Smith is housed, who are
serving sentences imposed under Texas law, are given "good time
credit" against their sentences as compensation for their work in

---

(transferred prisoner not member of suspect class based on
transfer); <u>Jeneski v. City of Worcester</u>, 476 F.3d 14, 16 (1st
Cir. 2007) (discussing suspect classification); <u>Mills v. State of
Me.</u>, 118 F.3d 37, 47 (1st Cir. 1997) (defining suspect class as
"'a class of persons characterized by some unpopular trait or
affiliation . . . [that would] reflect any special likelihood of
bias [against them] on the part of the ruling majority'" <u>quoting
N.Y. City Transit Auth. v. Beazer</u>, 440 U.S. 568, 593 (1979)).

the prison.  Smith does not receive good time credit against his New Hampshire sentence.

Under New Hampshire law, at the time of sentencing a disciplinary period of 150 days is added to each year of a minimum sentence that is longer than one year.  RSA 651:2, II-e. "This additional disciplinary period may be reduced for good conduct as provided in RSA 651-A:22."  Id.  The commissioner of corrections reviews the conduct of prisoners on a monthly basis to determine whether the prisoner has exhibited good conduct. RSA 651-A:22.  If so, the commissioner may reduce the disciplinary period for up to twelve and one half days at each monthly review.  Id.  Therefore, the Texas system of awarding good time credits to reduce a prisoner's sentence for work done while in prison is contrary to New Hampshire law.

The parties assume that Smith is similarly situated to the Texas prisoners with whom he is incarcerated.  An obvious material distinction, however, is that Smith is serving a sentence imposed under New Hampshire law while the Texas prisoners are serving sentences imposed under Texas law. Although Smith is housed in a Texas prison and is subject to the rules and procedures of that facility, his sentence is governed by different laws.  Therefore, Smith has not shown that he is

17

similarly situated to Texas prisoners for purposes of calculating his sentence, which is the issue for his equal protection claim.

The defendants argue that the policy of transferring prisoners to prisons outside of New Hampshire, despite differences in the rules and procedures in the prison systems of other states, serves a legitimate penological purpose.  They represent that the Interstate Corrections Compact and New Hampshire's agreement with Texas for transferring prisoners provide that transferred prisoners will be subject to the rules and regulations of the receiving state for housing, discipline, programs, and classification.[7]  They argue that the agreement serves a legitimate penological purpose of allowing New Hampshire and Texas to move inmates "who pose particular safety risks or who have enemies within the state prison system" to out-of-state facilities, which provides flexibility in dealing with problematic inmates.  The defendants assert that the policy of applying the receiving state's rules and procedures to a

_____

[7]The defendants did not file a copy of New Hampshire's transfer agreement with Texas in support of their objection to Smith's motion or in support of their own motion for summary judgment.  They also did not provide a record citation for the agreement.  Smith filed a copy of an agreement between Texas and New Hampshire as an addendum to his complaint and another copy of the same agreement in support of his motion for summary judgment. That agreement, however, states that it expired on December 31, 2000, four years before Smith was transferred to Texas.  Smith does not dispute the content of the agreement.

18

transferred inmate avoids the burdens and complications of applying a variety of different rules and procedures in the receiving facility.

Smith has not provided conclusive evidence, or any evidence, that the transfer policy does not serve a legitimate penological purpose.  As noted above, Smith also has not shown that he is similarly situated, for purposes of calculating his sentence, with Texas inmates.  Therefore, his motion for summary judgment on his equal protection claim is denied.

C.   Defendants' Motion for Summary Judgment

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex, 477 U.S. at 323.  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson, 477 U.S. at 256.  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

1.   Retaliatory Transfer

The defendants move for summary judgment on the ground that Smith cannot prove any causal connection between the suit he

filed in October of 2003 and the decision to transfer him to
Texas a year later.  They contend that the evidence shows that
Smith was transferred because of his bad behavior.  Smith argues
that the disciplinary problems he experienced between July and
December of 2004 were either false accusations or were the result
of harassment and antagonizing actions by the prison staff.

Taking the record in the light most favorable to Smith, the
timing of his disciplinary problems suggests a connection to
Coplan and Moyer leaving the prison.  Smith argues that prison
staff did not like the attention and bad publicity his suit was
bringing and retaliated against him for that.  He also contends
that Coplan and Moyer did not allow retaliation against him while
they were working at the prison but that the new officials were
not aware of the sentiment against Smith.

Smith provides no evidence, however, to support his
retaliation theories.  Within a month, between July 25 and August
19, 2004, Smith received four disciplinary reports, two for
threatening an officer, one for possessing a razor blade and the
home address of a staff member, and one for lying about the razor
blade.  He received hearings on the charges and was found guilty.
Even if his allegations were taken as true that harassment by
prison staff caused his behavior, Smith lacks any evidence that

the officers involved were motivated by retaliation against him
because of his suit against Coplan and Moyer.

Further, Smith had been transferred to prisons outside of
New Hampshire previously because of his behavior.  He returned to
New Hampshire only when those facilities would no longer allow
him to stay.  The record shows that the prison moved Smith to a
facility outside of New Hampshire whenever his behavior warranted
that action.

Based on the undisputed facts, Smith cannot prove that he
was transferred to Texas in retaliation for his suit against
Coplan and Moyer.  The defendants are entitled to summary
judgment on the retaliation claim.

2.  <u>Equal Protection</u>

Smith's equal protection claim does not raise a factual
issue.  As is discussed above in the context of Smith's motion
for summary judgment, Smith was not similarly situated to Texas
inmates with respect to the calculation of his sentence.  In
addition, the defendants explain the purpose for transferring
prisoners outside of New Hampshire, despite differences in the
receiving states' rules and procedures, which Smith has not
refuted.  The defendants defend the application of the receiving
state's rules and procedures as being necessary to avoid the

21

burdens and complications of applying the rules and procedures of
a variety of states in a single facility.  Smith has not shown a
material factual dispute about whether the prison's transfer
policy serves a legitimate penological purpose.  Therefore, the
defendants are entitled to summary judgment on this claim.

### Conclusion

For the foregoing reasons, the plaintiff's motion for a
hearing (document no. 98) is denied.  The plaintiff's motion to
strike (document no. 94) is granted.  The plaintiff's motions to
supplement (document no. 112) and to preserve discovery materials
(document no. 113) are denied, and the materials submitted will
be returned to the plaintiff unless he provides the name and
address of a person who has agreed to accept them **by February 15,
2008**.  The plaintiff's motion for summary judgment (document no.
85) is denied.  The defendants' motion for summary judgment
(document no. 73) is granted.

The clerk of court shall enter judgment accordingly and
close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

January 31, 2008

cc:  Andrew B. Livernois, Esquire
     Danielle Leah Pacik, Esquire
     Dennis A. Smith, pro se